IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| vs. ) | Case No. 17 C 1645 |
| ) | |
| DANA BOSTIC, ) | |
| ) | |
| Movant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In February 2012, Dana Bostic pled guilty to conspiracy to possess heroin with intent to distribute. In August 2012, the Court sentenced him to a prison term of 456 months. On appeal, the Seventh Circuit vacated Bostic's sentence and remanded his case for resentencing in light of an intervening Supreme Court case invalidating the *ex post facto* application of a particular sentencing enhancement. *See United States v. Adams*, 746 F.3d 734, 749 (7th Cir. 2014). The Court resentenced Bostic to 360 months' imprisonment in January 2015, and the Seventh Circuit affirmed this sentence on appeal. *See United States v. Gill*, 824 F.3d 653, 666 (2016). Bostic has moved to vacate his sentence pursuant to 28 U.S.C. § 2255(a).

## Background

The Court assumes familiarity with the background facts of Bostic's criminal case. In a nutshell, in 2009, the Chicago Police Department and the Drug Enforcement Administration began investigating the New Breeds, a violent street gang that ran an

extensive heroin distribution operation on the west side of Chicago. At the time, Dana Bostic controlled the New Breeds. He also supplied the heroin sold by the street-level members and received the proceeds from those sales. The investigation culminated in November 2010 with a twenty-two count grand jury indictment charging Bostic and thirteen others with various drug-related offenses. Bostic pled guilty to the first count: conspiracy to possess at least 1000 grams of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.

At Bostic's original sentencing hearing, the Court determined that his advisory Sentencing Guidelines range was 360 months to life, based on his criminal history category of II and an adjusted offense level of 42. This adjusted offense level included, among other enhancements, a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing drugs ("the stash house enhancement"), even though that enhancement had not gone into effect until after Bostic had already committed the conspiracy offense. *See* U.S.S.G. § 2D1.1(b)(12). After noting that then-existing Seventh Circuit precedent provided that the *Ex Post Facto* Clause did not apply to the Sentencing Guidelines, the Court explained that it would use 18 U.S.C. § 3553(a) to factor into Bostic's sentence the unfairness of applying the stash house enhancement "after the fact." Sentencing Tr. 19:1-19:15.[1] At the close of the two-day sentencing hearing, at which three of Bostic's co-conspirators testified, the Court sentenced him to 456 months in prison and 10 years of supervised release, noting that this sentence was approximately in the middle of the advisory range. Bostic appealed, and the Seventh Circuit vacated and remanded his case for resentencing based on its conclusion that

---

[1] No. 10 CR 673, ECF Nos. 785-786.

the application of the stash house enhancement was in error, in light of an intervening Supreme Court decision holding that the *Ex Post Facto* clause does indeed apply to the Sentencing Guidelines. See *Adams*, 746 F.3d at 749.

At Bostic's resentencing hearing, the Court incorporated its comments from the original hearing (except to the extent that they were inconsistent with points the Court made at resentencing) and recalculated his offense level at 38. This recalculation reflected the elimination of the stash house enhancement, as well as another two-level reduction in the offense level in anticipation of an applicable amendment to the Guidelines. In light of Bostic's criminal history category of II, this new offense level yielded an advisory range of 262 to 327 months' imprisonment. After determining the new range, the Court explained that, when it imposed Bostic's original sentence of 456 months' imprisonment, it accounted for the *ex post facto* nature of the stash house enhancement by considering it as a section 3553(a) factor and reducing Bostic's *effective* advisory range to 324 to 405 months even though, with the enhancement, the actual advisory range was 360 months to life. Resentencing Tr. 33:6-34:11.[2] The Court explained that it originally gave Bostic a sentence that was 51 months above that effective guideline range in order to fully account for his conduct during the conspiracy and his involvement in related violence. *Id.* at 34:9-34:18. Thus, at resentencing, the Court announced it was imposing a new sentence of 360 months, which was proportional to the initial sentence in the sense that it was "roughly the same[ ] amount of increase over the top end" of the new guideline range of 262 to 327 months as the initial sentence of 456 months was when compared to the effective guidelines range of

---

[2] No. 10 CR 673, ECF No. 909.

3

324 to 405 months. *Id.* at 36:12-36:14.[3] The Seventh Circuit affirmed Bostic's new, lower sentence in May 2016. *See Gill*, 824 F.3d at 664-66. In March 2017, Bostic filed the present motion to vacate his sentence pursuant to 28 U.S.C. § 2255(a).

## Discussion

Section 2255 authorizes a court to vacate, set aside, or correct a sentence that was imposed in violation of the Constitution or other federal law or that is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Bostic contends that he is entitled to relief under section 2255 on six different grounds. First, he argues that he received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney failed to object to the Court's application of the four-level leader/organizer role enhancement in the absence of a specific finding that Bostic was the leader of a conspiracy involving five or more participants. Next, Bostic argues that he received ineffective assistance of counsel because his attorney likewise failed to object to the Court's application of a two-level enhancement for the use of a firearm during the commission of a drug offense, contending that he was not shown to have personally possessed a gun. Bostic also argues that he should not have been assigned a criminal history point for a 1998 conviction for criminal trespass to a vehicle and that his attorney's failure to contest that point constituted ineffective assistance of counsel. He challenges a number of conditions of supervised release as unconstitutionally vague or otherwise improper and contends that his attorney's failure to object to them also constituted ineffective assistance. Bostic further argues that his above-guidelines sentence violates the Due Process Clause because it is the result of an improper initial

---

[3] *Gill*, 824 F.3d at 658-59, 664-66, provides a thorough summary of this explanation at the resentencing hearing.

Sentencing Guidelines calculation and that he received ineffective assistance of counsel because his attorney did not make this particular argument at the resentencing hearing or on appeal. Lastly, Bostic mistakenly asserts that the grand jury indictment is invalid because it was not signed by the grand jury foreperson or the U.S. Attorney.

A defendant may not raise constitutional claims in a section 2255 motion that he did not raise on appeal, unless he can demonstrate (1) good cause for his failure to raise those claims and actual prejudice or (2) that the refusal to consider the claims would result in a "fundamental miscarriage of justice." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). As a preliminary matter, the Court notes that Bostic does not initially frame a number of these arguments as ineffective assistance of counsel issues. Nonetheless, when explaining why these issues were not procedurally defaulted because they were not raised on direct appeal, Bostic makes it clear that these are, in fact, ineffective assistance of counsel claims. Additionally, in his reply brief, Bostic clarifies that all of the issues argued in his 2255 motion "were argued on the basis of ineffective assistance of counsel." Reply at 1. Bostic has not demonstrated that a refusal to consider these claims would result in a fundamental miscarriage of justice. Because he has not established cause and prejudice for any reason other than ineffective assistance of counsel, the Court considers all of these claims to be premised on ineffective assistance.

An ineffective assistance of counsel claim may be brought for the first time under section 2255; a defendant does not procedurally default such a claim by failing to raise it on direct appeal. *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). Nonetheless, "[i]t is well settled that, absent a fundamental miscarriage of justice,

arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999) (internal quotation marks and citations omitted). The Seventh Circuit has expressed a reluctance to allow defendants to circumvent this rule by recasting such arguments as ineffective assistance of counsel claims in collateral proceedings. *Id.* To ensure that "only Sentencing Guidelines errors of constitutional proportion are considered on collateral review," the Seventh Circuit requires "strict adherence to the requirements of an ineffective assistance of counsel claim." *Id.*

To prevail on an ineffective assistance claim, the defendant must establish not only that his attorney's performance "fell below an objective standard of reasonableness," but also that he suffered prejudice as a result. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 458 (citation omitted). Moreover, prejudice is established only if the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A defendant claiming ineffective assistance of counsel on a section 2255 motion is entitled to an evidentiary hearing on his claim "if he has alleged facts that, if proven, would entitle him to relief." *Gaylord*, 829 F.3d at 506 (internal quotation marks and citation omitted). But a district court is not required to grant a hearing before denying a 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Sullivan v. United States*, 877 F.3d 337, 339 (7th Cir.

2017).

**A.    Role enhancement**

The federal Sentencing Guidelines provide for a four-level enhancement based on the defendant's role in the offense "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).  A three-level enhancement is warranted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  *Id.* § 3B1.1(b).  A participant is someone "who is criminally responsible for the commission of the offense, but need not have been convicted."  *Id.* § 3B1.1(a) Application Note 1.  Bostic contends that his attorney's failure to object to this enhancement constituted ineffective assistance of counsel.  Specifically, he argues that his attorney should have objected on the grounds that (1) the Court did not support its conclusion that Bostic was the organizer or leader of the conspiracy at issue, and (2) neither the Court nor the presentence report specifically identified at least five participants.[4]

The Seventh Circuit has held that the district judge "must identify five participants in [the] offense" and determine whether the defendant exhibited leadership of or control over those participants in order to apply the four-level enhancement.  *United States v. Schweihs*, 971 F.2d 1302, 1318 (7th Cir. 1992).  Nonetheless, as the Government notes, even when the district court fails to make those specific findings, the Seventh

---

[4] The header of this section of Bostic's brief also alleges that "his Fifth Amendment [right] of the Due Process Clause [sic] was violated in applying the enhancements without the requisite number of participants," Mem. in Supp. of 2255 Mot. (Bostic. Mem.) at 7, but he does not further develop this argument.  As previously noted, in his reply brief, he states that all of his claims "were argued on the basis of ineffective assistance of counsel."  Reply at 1.

7

Circuit will uphold the sentence on appeal if the record adequately supports a determination that the enhancement is warranted. *E.g.*, *United States v. Hollins*, 498 F.3d 622, 633 (7th Cir. 2007); *United States v. McKinney*, 98 F.3d 974, 982 (7th Cir. 1996).

As a preliminary matter, Bostic's attorney did, in fact, argue that the four-level enhancement was unwarranted on the grounds that he was not an organizer or leader of the drug conspiracy at issue but instead was just a manager or supervisor. Sentencing Tr. 23:12-23:22. Based on the information presented in the presentence report and the testimony at Bostic's sentencing hearing, the Court expressly rejected this argument. Specifically, the Court concluded that "there is absolutely not a bit of doubt that [Bostic] was running a drug dealing organization." *Id.* at 290:18-290:20; *see also id.* at 297:10-297:12 ("What I do think has been absolutely demonstrated without question is that he was the leader of a drug organization of longstanding. . . ."). The Court also specifically rejected the suggestion that Bostic and co-conspirator Brandon Richards had the same amount of authority and culpability and thus deserved comparable sentences. *See id.* at 292:3-292:5 ("I know there's a dispute about whether Mr. Bostic was above Mr. Richards or not. I don't have a bit of doubt about that. He was.").

It is beyond question that the drug dealing organization led by Bostic involved more than five participants. Thirteen people other than Bostic were charged under the same conspiracy count in the indictment, and the presentence report indicates that at least twelve of those individuals pled guilty to that particular count. The presentence report's detailed description of the conspiracy likewise makes it clear that far more than

five participants were involved. According to the report, after Bostic and Richards obtained heroin from suppliers, Richards, Ladonta Gill, and Christopher Hunter helped process and package the heroin. Aaron Bagley distributed the packaged heroin to other street supervisors, including Maurice Davis, Tommy Moore, Raynard Bowser, and Cornelius Thomas. The street supervisors passed the drugs along to the street-level sellers, who included Derek Thomas, Parish Mitchell, Raymond McClain, and Tommy Adams. Testimony at the sentencing hearing revealed that even the lower-level participants who had little to no personal contact with Bostic understood him to be in charge of the operation. *See id.* at 53:7-53:8 (Davis explains that Bostic "took over the neighborhood" once "Boodro" got killed); *id.* at 169:3-169:9 (Bagley states that it was "common street knowledge" that Bostic controlled the territory around Congress, Van Buren, and Pulaski); *id.* at 203:16-204:4 (Thomas testifies that he understood he was not supposed to sell drugs that were not Bostic's because "it was his neighborhood . . . his territory").

In light of this record, it was eminently reasonable for Bostic's attorney to decide there was nothing to be gained by advancing the argument that the Court did not specifically identify at least five participants over which Bostic exhibited leadership or control. And even were the Court to find that the attorney's performance fell below an objective standard of reasonableness in this regard, Bostic has failed to show that he was prejudiced as a result. As previously explained, the Seventh Circuit will uphold the application of a role enhancement if it is supported adequately by the record, even if the district court failed to make the required findings when it applied the enhancement. *See Hollins*, 498 F.3d at 633. Because the record in this case provides sufficient evidence

to determine not only that Bostic was the leader of the drug conspiracy in question, but also that this conspiracy involved substantially more than five participants over which Bostic had ultimate control, the four-level enhancement was warranted and thus would have been upheld on appeal. Because Bostic has failed to show both that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result, the Court rejects this claim of ineffective assistance.

**B.	Firearm enhancement**

The Sentencing Guidelines also provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The application notes explain that this enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* § 2D1.1(b)(1) Application Note 11(A). In the context of a jointly undertaken criminal activity such as a drug trafficking conspiracy, unless otherwise specified, specific offense characteristics such as firearm possession are to be determined broadly, on the basis of "all acts and omissions" of others that were (1) within the scope of the conspiracy, (2) in furtherance of the conspiracy, and (3) reasonably foreseeable in connection with the criminal activity in question "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(B). Thus, it is well established that the firearm enhancement is applicable "if a defendant *or his co-conspirators* possessed a firearm during the course of a drug offense." *United States v. Tanner*, 628 F.3d 890, 907 (7th Cir. 2010) (emphasis added); *see also United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007) ("Although U.S.S.G. § 2D1.1(b)(1) appears to penalize only those

defendants who actually possess a firearm in the course of committing a drug offense, section 1B1.3(a)(1)(B) makes clear that defendants can also be on the hook for firearms possessed by their coconspirators so long as such possession was reasonably foreseeable.")

Bostic argues that he received ineffective assistance of counsel when his attorney failed to object to the application of this enhancement on the ground that Bostic himself was not determined to have possessed a firearm. In light of Seventh Circuit precedent establishing that reasonably foreseeable possession of a firearm by a co-conspirator may be attributed to a defendant, this argument lacks merit. It is well-established that participants in Bostic's drug operation possessed guns in connection with that operation. The presentence report states that, at the time of Richards's arrest, law enforcement recovered two firearms and over $2,000 in cash from his residence. Additionally, Bagley testified that he saw guns at 4019 West Van Buren, where New Breeds including Bostic gathered socially, and that co-conspirators including Gill carried guns around Bostic "to protect the spot and just to protect us in general." Sentencing Tr. 170:3-173:3. The presentence report further states that Richards, Bostic, and Bowser were intercepted in a number of cell phone calls discussing the need for New Breeds members to have firearms. Thus, there is evidence not simply that members of Bostic's organization carried guns during the course of the conspiracy, but also that this was within the scope of the conspiracy and in furtherance of it. Moreover, given Bostic's leadership role in the organization and the evidence that co-conspirators often carried guns around him, it is unrealistic to suggest that his co-conspirators' gun possession was not reasonably foreseeable to Bostic. *See, e.g., Luster*, 480 F.3d at 558

11

(defendant's "frequent presence" at location where guns and drugs were stored and knowledge that co-conspirator ran a large-scale cocaine distribution ring raise an inference that "he could have reasonably foreseen his coconspirator's possession of firearms for intimidation or protection").

In light of this evidence, it was objectively reasonable for Bostic's attorney not to challenge the application of the firearm enhancement on the ground that Bostic had not been shown to personally possess a firearm. The Court therefore concludes that Bostic has failed to demonstrate that he received ineffective assistance of counsel on this basis.

**C.    Criminal history point**

Pursuant to section 4A1.1(c) of the Sentencing Guidelines, a defendant typically receives one criminal history point for each prior sentence that is not counted as a three-point "prior sentence of imprisonment exceeding one year and one month" or a two-point "prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1(a)-(c). A sentence that was imposed more than ten years before the defendant commenced the instant offense, however, is not counted for purposes of § 4A1.1(c). *Id.* § 4A1.1 Application Note 3. Additionally, prior sentences for misdemeanor offenses "similar to" trespassing and a number of other less serious offenses are counted only if the sentence was a term of probation of more than a year or a term of imprisonment of at least thirty days, unless the instant offense is also similar. *Id.* § 4A1.2(c)(1).

Bostic argues that he received ineffective assistance of counsel when his attorney failed to challenge the assignment of one criminal history point for a December 1998 sentence of three months' supervision on a charge of criminal trespass to a

12

vehicle. First, he contends that his attorney should have objected because the sentence was imposed more than ten years before he was charged with the instant offense in November 2010. Bostic misunderstands the guidelines—only sentences that were imposed "more than ten years prior to the defendant's *commencement* of the instant offense" are excluded from § 4A1.1(c). *Id.* § 4A1.1 Application Note 3 (emphasis added). The conspiracy count to which Bostic pled guilty states that the conspiracy began "no later than in or about 2008." Indictment at 2.[5] It would be difficult to find that counsel's decision not to argue that a December 1998 sentence should not be counted under § 4A1.1(c) because it was imposed more than ten years prior to an offense that commenced "no later than in or about 2008" was an unreasonable strategic decision.

Bostic also argues that his attorney should have objected to the assignment of this particular criminal history point on another ground: he contends that criminal trespass to a vehicle is "similar to" trespassing and thus should not have been counted according to § 4A1.2(c)(1). Regardless of whether counsel's failure to raise that argument was objectively reasonable, Bostic cannot show that he was prejudiced by that failure. Even if the Court had declined to award Bostic a criminal history point for the sentence in question, thereby reducing his point total from three to two, *see* Sentencing Tr. 5:25-6:8, he would have remained in Criminal History Category II, because Category I is reserved for defendants who have no more than a single criminal history point. *See* U.S.S.G., Ch. 5, Pt. A. Accordingly, even if Bostic's attorney had raised a successful objection to the assignment of this particular criminal history point, the advisory range prescribed by the guidelines and Bostic's sentence would have

---

[5] No. 10 CR 673, ECF No. 204.

stayed the same. For that reason alone, Bostic cannot prevail on this ineffective assistance claim.

**D.    Supervised release conditions**

Bostic further argues that he received ineffective assistance of counsel when his attorney failed to contest 11 different conditions of supervised release on appeal on the ground that they are unconstitutionally vague or ambiguous. At this point, there is no need to evaluate the constitutionality of the supervised release conditions or decide whether Bostic's attorney's performance fell below an objective standard of reasonableness in this regard, because he cannot show that he has been prejudiced. Bostic contends that he was, in fact, prejudiced by his attorney's failure to object to the conditions, because, as the Seventh Circuit explained in *United States v. Kappes*, 782 F.3d 828, 867 (7th Cir. 2015), if certain supervised release conditions are vacated on appeal, "the balance struck by the sentencing judge might be disrupted to a degree where the judge would wish to alter the prison term . . . to ensure that the purposes of deterrence, rehabilitation, and protecting the public are appropriately furthered by the overall sentence." This does not help Bostic's case. If, faced with such a situation, a sentencing judge were inclined to alter a defendant's prison term at all, he or she would be more likely to lengthen the prison term rather than shorten it. *Cf. id.* at 836 n.2 ("[I]t is probable (and proper) that sentencing judges impose both custody and supervised release for somewhat overlapping purposes, and if supervised release was not an option the same judge might impose a lengthier custodial sentence. In this way, the imposition of supervised release can be seen as potentially reducing the custodial sentence.").

Bostic cannot show prejudice because none of the contested conditions of supervised release have yet gone into effect (nor will they for many years). Another reason Bostic cannot show prejudice is that, pursuant to *United States v. Neal*, 810 F.3d 512, 516 (7th Cir. 2016), a district court may modify a defendant's supervised release conditions "at any time" under 18 U.S.C. § 3583(e)(2). Thus, Bostic remains welcome to file a motion before the Court challenging the legality of his supervised release conditions under section 3583(e)(2). If Bostic does so, the Court will reassess and modify his conditions of supervised release as appropriate. Because Bostic cannot show that he was prejudiced by his attorney's failure to object to his supervised release conditions, this ineffective assistance of counsel claim fails.

**E.     Improper guidelines calculation**

Bostic additionally argues that his above-guidelines sentence was based on an improper initial guidelines calculation, in violation of the Due Process Clause. As a preliminary matter, to the extent that this is an argument that Bostic's sentence was either procedurally improper or substantively unreasonable, it is foreclosed because those arguments were already considered and rejected by the Seventh Circuit on direct appeal. *See Gill*, 824 F.3d at 663-66; *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances."). Bostic contends that this claim was preserved by counsel on appeal (and thus not procedurally defaulted), but in the same breath, he complains that "counsel did not call into question the Court's miscalcu[la]tion of the . . . guid[e]line[s]." Bostic Mem. at 26. Bostic also claims that his attorney's failure to argue that his sentence was based on an improper guidelines calculation

15

constituted ineffective assistance of counsel. Because the Court concludes that this issue was not preserved on direct appeal, it will consider this claim, too, under the ineffective assistance of counsel rubric.

Bostic's objection to the Court's initial guidelines calculation is confusing, but it seems to consist of two alternative arguments. Bostic first argues that, because the Court stated during the sentencing hearing that his original 456-month sentence was "in the middle of the guideline range," Sentencing Tr. 302:14—which the Court had earlier observed was 360 months to life—his attorney should have argued that it was improper for the Court to resentence him to an above-guidelines sentence after determining that the new advisory range was 262 months to 327 months. The Court explained at the resentencing hearing that, although Bostic's new sentence was based on a different guideline range, it was proportionate to the original sentence. Thus, according to Bostic, because his original sentence was in the middle of the 360-months-to-life guideline range, his new sentence would have to be in the middle of the recalculated 262-to-327-month range in order to be proportionate to the original sentence. It was not objectively unreasonable for Bostic's attorney to decline to make this meritless argument. As the Court explained (and as the Seventh Circuit reiterated in *Gill*), even though the advisory range was 360 months to life with the stash house enhancement, the Court took the *ex post facto* nature of that enhancement into account as a 3553(a) factor and used a lower, "effective" guidelines range of 324 to 405 months to calculate Bostic's original sentence of 456 months. *Gill*, 824 F.3d at 664-65; Resentencing Tr. 33:12-36:10. The fact that the Court did not fully explain this until the resentencing hearing in no way invalidates Bostic's current sentence or the advisory guideline

calculation on which it was based. *See Gill*, 824 F.3d at 666. Because this argument would not have been successful, Bostic likewise cannot show that he was prejudiced by counsel's decision not to raise it on appeal.

Bostic argues, in the alternative, that his attorney should have argued on appeal that, by basing his original sentence on an "effective" guidelines range that was lower than the actual range of 360 months to life, the Court willfully ignored what was, at the time, Seventh Circuit precedent requiring district courts to apply the stash house enhancement. Even if the Court were to accept the premise of this argument, it pertains only to Court's guidelines calculation at the original sentencing hearing, and not to Bostic's current sentence, which was calculated using a guidelines range that did not account for the stash house enhancement, in accordance with Supreme Court precedent in *Peugh v. United States*, 569 U.S. 530 (2013). It was not unreasonable for Bostic's attorney to decline to raise this losing argument (and, in any case, Bostic cannot demonstrate prejudice resulting from that decision). The Court therefore concludes that Bostic is not entitled to relief on this ineffective assistance claim.

## F.     Indictment

Lastly, Bostic challenges the validity of the underlying indictment based on the mistaken belief that it was not signed by the grand jury foreperson or the U.S. Attorney. The Court need not address this argument, because although the public version of the indictment (No. 10 CR 673, ECF No. 204) is unsigned, the sealed copy of the indictment (No. 10 CR 673, ECF No. 207) contains the signatures of both the foreperson and the U.S. Attorney.

**Conclusion**

For the foregoing reasons, the Court directs the Clerk to enter judgment denying Bostic's motion to vacate his sentence under 28 U.S.C. § 2255 [dkt. no. 1]. The Court declines to issue a certificate of appealability, because the disposition of Bostic's motion is not fairly debatable.

_____

Date: January 16, 2018